UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-81501-Civ-CANNON/MATTHEWMAN

BLANCHE L. DIXON AND ROY J.
DIXON, JR.,

      Plaintiffs,

vs.

JOSEPH ABRUZZO, Clerk and Comptroller
of Palm Beach County, Florida, in his
personal capacity, SAMANTHA SCHOSBER,
in her personal capacity, CROSSCOUNTRY
MORTGAGE LLC, CLEAR2CLOSE TITLE &
ESCROW LLC, RYAN S. SHIPP,

      Defendants.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' JOINT MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT [DE 22]**

      **THIS CAUSE** is before the Court upon Defendants, Joseph Abruzzo, Clerk of the Circuit

Court & Comptroller, Palm Beach County ("Abruzzo"), Judge Samantha Schosberg Feuer ("Judge

Schosberg Feuer"),[1] CrossCountry Mortgage, LLC ("CrossCountry"), Ryan S. Shipp ("Shipp"),

and Clear2Close Title & Escrow, LLC's ("Clear2Close") Joint Motion to Dismiss Plaintiffs'

Amended Complaint ("Joint Motion") [DE 22]. This matter was referred to the undersigned United

States Magistrate Judge by the Honorable Aileen M. Cannon, United States District Judge. *See*

---

[1] As noted by Defendants, Plaintiffs' Amended Complaint has misspelled Judge Samantha Schosberg Feuer's name as "Samantha Schosber." [DE 22 at 1]. The Court will use Judge Schosberg Feuer's correct name throughout this Report and Recommendation.

DEs 36, 37. Plaintiffs, Blanche L. Dixon and Roy J. Dixon, Jr. ("Plaintiffs"), have filed a response [DE 33], and Defendants have not filed a reply. The Court has very carefully reviewed the parties' papers and the entire docket. For the reasons that follow, the undersigned United States Magistrate Judge **RECOMMENDS** that the United States District Judge **GRANT IN PART AND DENY IN PART** Defendants' Joint Motion [DE 22].

## I.    BACKGROUND

a.   The Instant Case

On November 17, 2022, Plaintiffs filed an Amended Complaint for Deprivation of Constitutional Due Process Rights and for Declaratory Judgment Relief ("Amended Complaint") [DE 13]. Plaintiffs' Amended Complaint—brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331—alleges that Plaintiffs' home was "unlawfully sold . . . at a foreclosure auction sale" due to "fraudulent orders." [DE 13 at 2]. Plaintiffs' Amended Complaint therefore alleges the following causes of action: (1) civil theft under section 772.11(1) and 812.014(1)(a) & (b), Florida Statutes, against Defendants CrossCountry, Shipp, and Clear2Close ("Count I"); (2) civil conspiracy, against Defendants CrossCountry, Shipp, and Clear2Close ("Count II"); (3) violation of the Fourteenth Amendment, against Defendants Abruzzo and Judge Schosberg Feuer ("Count III"); (4) conspiracy to deprive of due process under section 1983, against Defendants Abruzzo and Judge Schosberg Feuer;[2] and (5) quiet title, against Defendant CrossCountry. [DE 13 at 7–12]. Moreover, although not numbered as a separate count, Plaintiffs' Amended Complaint also requests "declaratory judgment relief" against Defendants CrossCountry and Judge Schosberg Feuer. *Id.* at 12–13.

---

[2]  Counts III and IV are seemingly brought by Defendant Blanche L. Dixon ("Mrs. Blanche") alone.

More specifically, Plaintiffs' Amended Complaint appears to allege two different series of events. The first is that Defendants CrossCountry, Shipp, and Clear2Close purportedly committed civil theft of Plaintiffs' home with "felonious intent" and conspired to create a Warranty Deed to "unlawfully convert the property" to an individual by the name of Ericka Chase. *Id.* at 3–4, 7–9. The second is that, while there was a pending quiet title action in federal court, Judge Schosberg Feuer "acted under the color of law, and outside of her judicial capacity, and violated plaintiff Mrs. Dixon's due process civil rights secured under the United States Constitution by unlawfully ruling Mrs. Dixon a vexatious litigant, and granting the defendants motion to dismiss her 'Quiet Title' claim with prejudice, without subject matter jurisdiction." *Id.* at 4.

With respect to this second event, Plaintiffs contend that Defendants Judge Schosberg Feuer and Abruzzo conspired to deprive Mrs. Dixon of due process by deleting her Rule 1.540(b)(4) motion to vacate from the docket. *Id.* at 9–11. Plaintiffs therefore request that Judge Schosberg Feuer's orders "be declared null and void for lack of jurisdiction," that Plaintiffs "be adjudged the legal owners of the stolen property and entitled to . . . possession as sole owners," that CrossCountry "be adjudged to have no estate interest whatever in the stolen property," that Ericka Chase "be ordered to leave the property," and that "all documents recorded adversely and fraudulently after December 17, 2018, when the first foreclosure was vacated as null and void . . . be declared null and void, and deleted." *Id.* at 13.

b. Relevant Cases

The *pro se* Plaintiffs are serial litigants who are no stranger to the federal or state court system, as is inherently acknowledged in their Amended Complaint. *See* DE 13 at 5–7. The Court

must therefore discuss several state and federal cases that are relevant for purposes of the instant Report & Recommendation.[3]

i.    Foreclosure Case

On October 28, 2014, Green Tree Servicing LLC filed a Verified Complaint for Foreclosure of Mortgage against Defendants Roy and Blanche Dixon ("the Dixons") in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2014-CA-013158-XXXX-MB ("Foreclosure Case"). [Foreclosure Case DE 1]. Nearly five years later, on September 27, 2019, the trial court entered a Final Judgment of Foreclosure against the Dixons. [Foreclosure Case DE 248]. The trial court then entered an Omnibus Order on October 18, 2019, denying various post-judgment motions. [Foreclosure Case DE 274]. As part of that Omnibus Order, the trial court forbade the Dixons "from filing any further pleadings *pro se* in the trial court in this case." [Foreclosure Case DE 274 at 2]. Accordingly, pursuant to the Final Judgment of Foreclosure, on November 5, 2019, the Dixons' property was sold to Marcel Llerena Alvarez at a foreclosure sale. [Foreclosure Case DE 304]. Thereafter, following an appeal of the Final Judgment of Foreclosure and of several related motions, the Fourth District Court of Appeal *per curiam* affirmed in an unwritten opinion. [Foreclosure Case DE 353].

ii.   Vexatious Litigant Case

Notably, on March 17, 2015, in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2014-CA-014168-XXXX-MB ("Vexatious Litigant Case"), the trial court declared Mr. Dixon a vexatious litigant and barred him "from filing any further pleadings in the County or Circuit Court of the 15th Judicial Circuit unless such pleadings

---

[3] As stated below in Section IV, the Court takes judicial notice of these cases.

are filed through counsel with a verification by the Plaintiff and counsel that the pleadings are filed in good faith." [Foreclosure Case DE 61 Ex. A]. Thus, the Foreclosure Case was not the first time—nor the last—that at least one of the Dixons has been barred from *pro se* filings.

    iii.   <u>Prior Federal Case</u>

On September 30, 2021, Plaintiffs filed a Third Amended Complaint in case number 20-81363-CV-ALTMAN ("Prior Federal Case"). [Prior Federal Case DE 191]. In that case, Plaintiffs alleged a violation of the Due Process Clause against Defendant Abruzzo for allegedly suppressing 92 pages of forensic evidence on the docket, and a quiet title claim against Ericka N. Chase, who Plaintiffs alleged "acquire[ed] the Plaintiffs' stolen property from Marcel Llerena Alvarez in June 2020." [Prior Federal Case DE 191 at 11–14].

After Defendants Abruzzo and Ericka N. Chase filed a Joint Motion to Dismiss Third Amended Complaint [Prior Federal Case DE 193], the court entered an Order that: (1) denied the Joint Motion to Dismiss with respect to Ericka N. Chase as moot because Ms. Chase had been voluntarily dismissed from the case; (2) dismissed Mrs. Dixon's due process claim for lack of standing; (3) dismissed Mr. Dixon's request for a default judgment; (4) denied Defendant Abruzzo's *Rooker-Feldman* request as it related "to the Clerk's misfeasance in compiling and submitting the appellate record"; (5) granted the Joint Motion to Dismiss as to the claim explicitly challenging the Fourth DCA's ruling on a motion to supplement; (6) granted the Joint Motion to Dismiss as to any aspect of the Plaintiffs' due process claim that survived standing and *Rooker-Feldman* inquiries; and (7) granted the Motion to Dismiss "as to any part of the Dixons' claim that ha[d] survived the standing, *Rooker-Feldman*, and statute-of-limitations bars." [Prior Federal Case DE 207 at 8–19].

Accordingly, the court dismissed Plaintiffs' claim without prejudice based upon either a lack of standing, the *Rooker-Feldman* doctrine, or statute of limitations grounds pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). [Prior Federal Case DE 207 at 19–20]. However, the court dismissed Plaintiffs' claims "*without leave to amend* because any further amendment would be futile." *Id.* at 20.

  iv. <u>Civil Theft Case</u>

On March 9, 2022, Plaintiff Blanche L. Dixon filed a Verified Amended Complaint for Civil Theft and for Declaratory Judgment in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2022-CA-001549-XXXX-MB ("Civil Theft Case"). [Civil Theft Case DE 21]. Within the Amended Complaint in that case, Mrs. Dixon challenged the foreclosure judgment and alleged the following causes of action: (1) civil theft under sections 772.11(1) and 812.014(a)(a) & (b), Florida Statutes; (2) fraud; (3) fraudulent misrepresentation; (4) tortious interference with business relationship; (5) quiet title; and (6) declaratory relief. [Civil Theft Case DE 21]. Notably, Mrs. Dixon's quiet title claim was brought against Countrywide Home Loans, Inc., Federal National Mortgage Association, CrossCountry Mortgage, LLC, and Ericka Chase. [Civil Theft Case DE 21 at 24–27]. In any event, on July 18, 2022, Mrs. Dixon filed an Emergency Notice of Voluntary Dismissal, stating that she had "erroneously and prematurely filed th[e] action before the federal court [disposed] of the Plaintiff's federal action under Case No 20-81363." [DE 33-1 at 1].

Subsequently, on July 19, 2022—after Mrs. Dixon filed her Emergency Notice of Voluntary Dismissal—the trial court entered an Order Granting Defendant CrossCountry Mortgage LLC's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice. [Civil Theft

Case DE 80]. The court found that "[d]ismissal of the Amended Complaint as against CrossCountry is appropriate where Plaintiff fails to allege facts that affirmatively show that Plaintiff is not prohibited by[] Section 702.036, Fla. Stat., from maintaining this action that expressly seeks to set aside, invalidate or challenge the validity of the Final Judgment of Foreclosure of the Mortgage against Plaintiff." [Civil Theft Case DE 80 at 2]. Further, that same day, the trial court also entered an Order declaring Mrs. Dixon a vexatious litigant. [Civil Theft Case DE 81]. It did so because, according to the trial court's findings, Mrs. Dixon was "serving as an alter ego for her husband . . . and must be subject to the restrictions matching those of the prior Vexatious Litigant Order entered against her husband . . . by the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida on March 17, 2015 in Case No. 50-2014-CA-014618-XXXX-MB." [Civil Theft Case DE 81 at 2–3].

## II.       MOTION AND RESPONSE IN THIS FEDERAL CASE

### a.   Defendants' Motion [DE 22]

Defendants first note that "[t]his action is not the first time the Plaintiffs have filed an action in this Court against the Clerk, a Fifteenth Judicial Circuit judge, various financial entities, and individuals for allegedly violating their constitutional rights and seeking to quiet title on an already foreclosed property." [DE 22 at 3]. Indeed, Defendants state that, "in *Dixon v. Clerk, et al.*, Case No. 20-81363-CIV-ALTMAN, the Southern District of Florida dismissed the Plaintiffs' suit in which they pushed forward the same quiet title claims and constitutional violations that are currently before this Court." *Id.* And, Defendants note that lawsuit resulted in Plaintiffs' claims of constitutional violations being dismissed with prejudice, "as their claims were barred by the statute of limitations and/or by *Monell*." *Id.* Moreover, according to Defendants, "[t]o the extent that the

Southern District dismissed the Plaintiffs' claims without prejudice but without leave to amend," Plaintiffs "filed the instant action based on the same facts and grievances that the Plaintiffs have litigated numerous times." *Id.*

Consequently, it is Defendants' position that the instant suit "is the latest in a series of frivolous legal actions filed by Plaintiffs, all with the same purpose – to vacate final judgments and orders in certain Fifteenth Judicial Circuit of Florida cases." *Id.* These lawsuits have resulted in admonishments from several courts, "including Mr. Dixon being declared a vexatious litigant in the Fifteenth Judicial Circuit and both Dixons being barred from filing further *pro se* documents in the foreclosure action [in state court]." *Id.* at 4. With this backdrop in mind, Defendants note that "in the face of these admonitions and filing restrictions, the Plaintiffs chose to continue their vexatious litigation in this Court with yet another federal lawsuit, this one now filed against governmental officials, companies, and individuals who have crossed legal paths with the Dixons at various times relating to their endless foreclosure saga." *Id.* at 4–5. Accordingly, Defendants set forth a myriad of arguments.

First, Defendants argue that the *Rooker-Feldman* doctrine bars suit against all five Defendants, as Plaintiffs' lawsuit is merely an attempt at challenging the 2019 state foreclosure judgment. *Id.* at 5–7. Second, Defendants turn to standing,[4] arguing that Plaintiffs lack standing to sue against all five Defendants. *Id.* at 21. Specifically, with respect to Defendants Abruzzo and Judge Schosberg Feuer, Defendants argue that Plaintiffs "have not and cannot allege any facts showing [Abruzzo and/or Judge Schosberg Feuer] deprived the Plaintiffs of their rights," as "[t]he

---

[4] The Court has reorganized some of Defendants' arguments for organizational purposes, although the Court first addresses standing below in its analysis.

only harm that the Plaintiffs can point to was independently caused by their own behavior, i.e. their nonstop filing of frivolous suits." *Id.* at 22. Moreover, with respect to Defendants CrossCountry, Shipp, and Clear2Close, Defendants argue that Plaintiffs cannot show that the subject property was "stolen" and that Plaintiffs "have not shown and cannot show that any purported harm can be redressed by a favorable judicial decision, as any decision in favor of the Plaintiffs would necessarily upend the doctrine of res judicata and overturn numerous Federal and State court rulings concerning the property foreclosure." *Id.* at 23.

Next, even assuming this Court has jurisdiction (and that *Rooker-Feldman* does not apply), Defendants argue that Plaintiffs' claims should be dismissed for failure to state a cause of action. *Id.* at 7. Defendants contend that—with respect to Count I—Plaintiffs' Amended Complaint fails to state a cause of action for civil theft under either section 772.11(1) or 812.014, Florida Statutes, because "the allegations . . . do not set forth facts capable of establishing the required elements of Plaintiffs' cause of action," and are merely naked assertions that are devoid of additional factual enhancement. *Id.* at 8. To this end, Defendants maintain that Plaintiffs did not assert any factual support that Defendants CrossCountry, Shipp, and Clear2Close had the requisite "felonious intent" to steal. *Id.* at 9.

As to Count II, Defendants argue that Plaintiffs' Amended Complaint fails to state a claim for civil conspiracy against Defendants CrossCountry, Shipp, and Clear2Close. *Id.* Similar to Count I, Defendants contend that Plaintiffs' allegations fail to set forth sufficient ultimate facts to support the required elements of a civil conspiracy claim. *Id.* at 10–11.

Subsequently, Defendants contend that Plaintiffs' Amended Complaint fails to state a cause of action against Defendants Abruzzo and Judge Schosberg Feuer as to Counts III and IV,

as Plaintiffs' Amended Complaint "fails to establish section 1983 liability for conspiracy," and also "fails to establish section 1983 liability in [Defendant Abruzzo's] personal capacity." *Id.* at 18–20. On this matter, Defendants argue that collateral estoppel bars Mrs. Dixon's section 1983 claims under Counts III and IV against Defendant Abruzzo, as "both counts . . . ha[ve] been previously litigated and resolved against the Plaintiffs in the state courts and, most significantly, w[ere] also dismissed earlier this year in the most recent federal case – Case No. 20-81363-CIV-ALTMAN." *Id.* at 21. Further, Defendants argue that judicial and quasi-judicial immunity bars all claims against Defendants Judge Schosberg Feuer and Abruzzo, respectively. *Id.* at 23–27.

Thereafter, Defendants argue that Plaintiffs' Amended Complaint also fails to state a cause of action as to both Count V and the unnumbered declaratory judgment claim. *Id.* at 11. Under Count V, Defendants argue that Plaintiffs cannot state a quiet title cause of action because Plaintiffs lost title to the property according to their own allegations, and "a party must have title to a property to bring an action to quiet title." *Id.* at 16. Turning to the unnumbered declaratory judgment cause of action, then, Defendants argue that "Plaintiffs' rights, or the lack thereof, are clearly defined under prior judgments and orders," and that there is thus no "justiciable controversy." *Id.* at 17–18. Additionally, although unrelated to the failure to state a cause of action—with respect to Count V and the unnumbered declaratory judgment causes of action— Defendants argue that: (1) Plaintiffs fail to allege subject matter jurisdiction; (2) the *Rooker-Feldman* doctrine prohibits federal review of the state foreclosure judgment; (3) Plaintiffs' claims are barred by res judicata and collateral estoppel; (4) Plaintiffs lack standing; and (5) the claims are barred by section 702.036(1)(a), Florida Statutes.[5]  *Id.* at 12–16.

---

[5] Defendants' arguments here are duplicative of many of their earlier arguments.

In conclusion, Defendants argue that dismissal with prejudice is warranted, as "Plaintiffs have repeatedly filed suit regarding the same set of facts, to no avail" and "[i]t is a waste of the parties' time and resources to continually defend against this matter, and for the judiciary to be forced to continually re-evaluate the same claims." *Id.* at 28.

     b.  <u>Plaintiffs' Response [DE 33]</u>

First, Plaintiffs argue that they are not challenging the 2019 foreclosure case judgment, and that their mention of the judgment was "to give the Court a background of the heinous and egregious acts committed in violation of the U.S. Constitution." *Id.* at 2. Plaintiffs state that they "brought the instant action based on an independent . . . claim . . . that denies a legal conclusion that the state court reached on July 19, 2022, and is not time barred by the four years statute of limitations." *Id.* Plaintiffs further state that there are exceptions to the *Rooker-Feldman* doctrine "when the state court judgment was procured through fraud, deception, accident, or mistake, as in this case before the court." *Id.* In this regard, it is Plaintiffs' position that the quiet title action in the Prior Federal Case took priority and that the state court therefore had no jurisdiction to enter its dismissal order in the Civil Theft Case. *See id.*

Next, and in connection therewith, Plaintiffs assert that "Mrs. Dixon's violation of due process claims brought in Count 3 & 4, of the amended complaint is not based on the same facts and grievances of the [Plaintiffs'] prior litigation under Case No. 20-81363, and occurred on July 19, 2022," and that judicial immunity does not apply because Defendants acted under the color of law in clear absence of all jurisdiction. *Id.* at 3–4. Indeed, Plaintiffs argue that Mrs. Dixon had an absolute right to voluntarily dismiss her case pursuant to Florida Rule of Civil Procedure 1.420. *Id.* at 5–7. Plaintiffs additionally argue that Defendants Abruzzo and Judge Schosberg Feuer

"personally participated in the constitutional violations," and that the two "made an agreement to act in concert to inflict a constitutional violation against Mrs. Dixon." *Id.* at 4, 7 (emphasis omitted).

Further, Plaintiffs argue that their quiet title claim is not barred by res judicata, as the quiet title claim "could not have been decided in the state court because Mrs. Dixon voluntar[ily] dismissed the action," and because Plaintiffs' quiet title claim "was not decided in the prior federal litigation under Case No. 20-81363, and was denied a[s] moot, [in] the state court case." *Id.* at 8. Plaintiffs also argue that they "still have the original legal title to their stolen home, and an unsatisfied mortgage on the property, and . . . ha[ve] not received a 'Release of Mortgage' on their stolen home." *Id.* at 9.

Finally, after further arguments concerning *Rooker-Feldman* and judicial immunity, Plaintiffs argue that their Amended Complaint has established a cause of action under sections 772.11(1) and 812.014, Florida Statutes. *Id.* at 11–12. According to Plaintiffs, this is because Defendants CrossCountry and Clear2Close "decided to execute a fraudulent mortgage and title on the stolen home and knowingly committed the civil theft with 'felonious intent' to permanently deprive [Plaintiffs] of their right and benefit of their stolen homestead property and appropriated the stolen property to Ericka Chase." *Id.* at 13.

## III.   RELEVANT LAW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

A defendant may move to dismiss a pleading for failure to state a claim upon which relief can be granted under Rule 12(b)(6). A defendant may also move to dismiss a pleading for lack of subject-matter jurisdiction under Rule 12(b)(1). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). However, "[w]hen a defendant files a Rule 12(b)(1) motion, the plaintiff, as the party invoking the authority of a federal court to seek relief, bears the burden of establishing federal subject-matter jurisdiction." *Thompson v. Ryder Sys., Inc.*, No. 22-20552-CIV, 2022 WL 18776108, at *2 (S.D. Fla. Oct. 11, 2022).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the

13

motion." *Id.* (quoting *McElmurray v. Consol. Gov't of August-Richmond Cnty.*, 501 F.3d 1244, 1250 (11th Cir. 2007)). "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* "Challenges to a plaintiff's standing to sue under Article III of the Constitution are attacks on federal subject-matter jurisdiction . . . [and] fall under Rule 12(b)(1)." *Thompson*, 2022 WL 18776108, at *2. Likewise, *"*[a] Rule 12(b)(1) motion based on the *Rooker-Feldman* doctrine presents a factual attack on jurisdiction." *Williams v. Dovenmuehle Mortg. Incorporation*, No. 17-60191-CIV, 2017 WL 4303841, at *2 (S.D. Fla. June 16, 2017).

"When the defendant challenges the complaint under *both* Rules 12(b)(1) and 12(b)(6), [courts] ask whether there's any overlap between the jurisdictional inquiry and the merits." *Dixon v. Epiq Corporate Restructuring, LLC*, No. 20-81363-CIV, 2022 WL 2290523, at *4 (S.D. Fla. June 24, 2022). "Where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claims under Rule 12(b)(1) or Rule 12(b)(6). Or both." *Id.* (alteration omitted) (quoting *Brownback v. King*, 141 S. Ct. 740, 749 n.8 (2021)). "But, where the 'overlap between merits and jurisdiction may not exist,' the district court 'might lack subject matter jurisdiction for non-merits reasons, in which case it must dismiss the case under Rule 12(b)(1)." *Id.* (quoting *Brownback*, 141 S. Ct. at 749 n.8). "The district court should 'rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's cause of action*.'" *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

## IV.   <u>ANALYSIS</u>

Defendants raise a multitude of arguments in their Joint Motion to Dismiss; specifically, they advance arguments concerning: (1) standing; (2) the *Rooker-Feldman* doctrine; (3) judicial and quasi-judicial immunity; and (4) various other arguments, including failure to state a cause of action as to all counts alleged, res judicata, and collateral estoppel. The Court will address each argument, in turn, to the extent necessary. But before doing so, first, Defendants request that the Court take judicial notice of several state and federal court cases referenced in their Joint Motion to Dismiss. [DE 4 at n.7].

At the motion to dismiss stage, "courts are [generally] confined to the four-corners of the complaint and any documents attached thereto." *Ritter v. Short Hill Aviation Servs., Inc.*, No. 19-62691-CIV, 2020 WL 13567933, at *2 (S.D. Fla. Apr. 14, 2020) (quoting *Lady of Am. Franchise Corp. v. Cunningham*, No. 08-61110-CV, 2008 WL 11333325, at *2 (S.D. Fla. Nov. 26, 2008)). "However, the Eleventh Circuit has announced several exceptions to this rule." *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678-CIV, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008). Specifically, "[w]hen adjudicating factual attacks on its subject matter jurisdiction, the Court may look at materials from outside the four corners of the complaint insofar as they relate to jurisdictional questions." *Commodity Futures Trading Comm'n v. G7 Advisory Servs., LLC*, 406 F. Supp. 2d 1289, 1292 (S.D. Fla. 2005). In this regard, "[w]ithout converting the motion to dismiss into a motion for summary judgment, the Court may . . . consider documents that are part of the public record such as documents filed in this Court or others." *Ritter*, 2020 WL 13567933, at *2 (quoting *Lady of Am. Franchise Corp.*, 2008 WL 11333325, at *2)). Indeed, "courts may take judicial notice of public records, such as a pleading filed in another court, because such documents

are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1365 (S.D. Fla. 2016) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999)).

Therefore, because this Court may take judicial notice of a filing in another court case at the motion to dismiss stage, *see Navarro*, 192 F. Supp. 3d at 1365, the Court takes judicial notice of the following cases and the filings contained therein that are pertinent for purposes of the instant order: (1) *Dixon v. Bd. of Cnty. Comm'rs*, No. 50-2014-CA-014168 (Fla. 15th Cir. Ct.); (2) *Dixon v. Green Tree Servicing LLC*, No. 50-2014-CA-013518 (Fla. 15th Cir. Ct.); and (3) *Blanche Dixon & Roy Dixon, Jr. v. Clerk, et al.*, Case No. 20-81363-CIV-ALTMAN (S.D. Fla.).[6]

a.  Standing

"For a party to have standing to bring a lawsuit, it must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The plaintiff bears the burden of establishing standing as the party invoking federal jurisdiction. *Spokeo, Inc.*, 578 U.S. at 338. With respect to the first prong, "the plaintiff must have suffered an 'injury in fact,' or 'an invasion of a legally protected interest which is . . . concrete and particularized.'" *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

---

[6] Although not specifically requested by Defendants, the Court also takes judicial notice of case number 50-2014-CA-014168-XXXX-MB, in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the Vexatious Litigant Case) to ensure a complete record.

As to the second prong, "an injury is not fairly traceable to the actions of a defendant if caused by the 'independent action of some third party not before the court' and likewise a controversy is not justiciable when a plaintiff independently caused his own injury.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (quoting *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012)). And finally, as to the third prong, "it is necessary to establish that it is 'likely, as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Nat'l Parks*, 324 F.3d at 1241 (internal quotation marks partially omitted) (quoting *Lujan*, 504 U.S. at 561). The third prong "focuses on the requested relief" and, "[i]f there's no 'connection between the alleged injury and the judicial relief requested,' the injury isn't redressable." *Dixon*, 2022 WL 2290523, at *5 (alteration omitted) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Here, at step one, Plaintiffs have alleged five counts (six, including the unnumbered declaratory judgment action), essentially stating that they (or Mrs. Dixon alone) have suffered an injury-in-fact by: (1) losing the benefit and possession of the family home, despite the property purportedly being protected by Florida's homestead law; (2) having Judge Schosberg Feuer declare Mrs. Dixon a vexatious litigant and denying her motion without subject matter jurisdiction; (3) having Defendants Judge Schosberg Feuer and Abruzzo purportedly conspire to delete Mrs. Dixon's rule 1.540(b)(4) motion to vacate from the docket; and (4) having a cloud remain on their "stolen property" based on Defendant CrossCountry's "fraudulent mortgage." This is arguably enough to allege an injury-in-fact and to satisfy standing at the first step. *See Dixon*, 2022 WL 2290523, at *5.

17

That said, according to Defendants, the problem lies at steps two and three. Specifically, with respect to Judge Schosberg Feuer and Abruzzo, Defendants argue that Plaintiffs' harm was "independently caused by their own behavior, i.e. their nonstop filing of frivolous suits." [DE 22 at 22]. Moreover, with respect to CrossCountry, Shipp, and Clear2Close, Defendants contend that Plaintiffs "have not shown and cannot show that any purported harm can be redressed by a favorable judicial decision." [DE 22 at 22–23].

While it is true Plaintiffs vaguely allege a widespread adoption of "Systemic Racist Custom, Pattern" at the Fifteenth Judicial Circuit in the Amended Complaint as part of their claims against Judge Schosberg Feuer and Abruzzo—and therefore arguably partially attack the actions of some third parties not before the Court—Plaintiffs ultimately contend that Judge Schosberg Feuer acted outside of her jurisdiction and conspired with Abruzzo to remove Mrs. Dixon's motion to vacate from the docket. In this regard, Plaintiffs' frequent filings likely led to Mrs. Dixon being declared a vexatious litigant and Plaintiffs may have therefore caused their own injury. However, Plaintiffs argue that Judge Schosberg Feuer exceeded the trial court's subject matter jurisdiction, leading to a constitutional violation. This is arguably enough to satisfy standing at the second step. *See Dixon*, 2022 WL 2290523, at *5 (finding standing at step two (and overall) where Mr. Dixon suggested that he lost the "opportunity to be fairly heard" because the Clerk of Court suppressed forensic evidence). Moreover, as to the claims against the remaining Defendants, the Undersigned finds that Plaintiffs' allegations have weakly but sufficiently tied Defendants' conduct to Plaintiffs' claimed injuries "at this early stage of the litigation." *See Dixon*, 2022 WL 2290523, at *4. However, Plaintiffs' standing is at best marginal.

At step three, Defendants argue that Plaintiffs cannot establish standing because of *res judicata* and the *Rooker-Feldman* doctrine. *See* DE 22 at 23. However, step three of the standing analysis focuses on the requested relief sought, and standing is an entirely separate inquiry from *res judicata* and *Rooker-Feldman*. *See Dixon*, 2022 WL 2290523, at *5. Here, Plaintiffs either seek damages, to quiet title, or a declaratory judgment, and a favorable decision as to any of these matters—no matter how unlikely that may be—would certainly redress Plaintiffs' injuries. Therefore, the Undersigned also finds that Plaintiffs have marginally satisfied standing "at this early stage of the litigation."[7] *See Dixon*, 2022 WL 2290523, at *5.

b. <u>*Rooker-Feldman*</u>

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Under the *Rooker-Feldman* doctrine, federal district courts and courts of appeals do not have jurisdiction to review state-court decisions." *Nash v. Fifth Dist. Ct. of Appeals*, 806 F. App'x 870, 872 (11th Cir. 2020). Indeed, "[t]he Eleventh Circuit and many district courts have applied the <u>Rooker-Feldman</u> doctrine to dismiss actions where a plaintiff was seeking to challenge a state court foreclosure judgment under the guise of federal claims." *Moss v. Davis*, No. 17-24280-CIV, 2017 WL 11428471, at *1 (S.D. Fla. Dec. 21, 2017), *report and recommendation adopted*, No. 17-24280-CIV, 2018 WL 9617250 (S.D. Fla. Aug. 1, 2018).

---

[7] The Undersigned has serious questions about Plaintiffs' standing. But nonetheless, the Undersigned will find standing sufficient at this early stage of the litigation, especially in light of the analysis on jurisdiction, judicial immunity, and quasi-judicial immunity below.

"The [*Rooker-Feldman*] doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or if it 'succeeds only to the extent that the state court wrongly decided the issues.'" *May v. Morgan Cnty. Ga.*, 878 F.3d 1001, 1005 (11th Cir. 2017) (alteration omitted) (quoting *Casale*, 558 F.3d at 1260). "It does not apply, however, where a party did not have a reasonable opportunity to raise his federal claim in state proceedings." *Id.* Moreover, "[o]nly when a losing state court litigant calls on a district court to modify or 'overturn and injurious state-court judgment' should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Behr v. Campbell*, 8 F.4th 1206, 1210 (11th Cir. 2021) (quoting *Exxon Mobil Corp.*, 544 U.S. at 292). To this end, the *Rooker-Feldman* doctrine does not preclude an independent damages claim where such claim "does not necessarily seek appellate review and reversal of the state court judgment." *See Kohler v. Garlets*, 578 F. App'x 862, 864 (11th Cir. 2014). However, where a plaintiff's *true* intent is to attack the state-court judgment, the *Rooker-Feldman* doctrine applies. *See Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1324–25 (S.D. Fla. 2011), *aff'd*, 477 F. App'x 558 (11th Cir. 2012).

In *Figueroa*, a plaintiff "assert[ed] three claims, all violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962." *Id.* at 1312. Ultimately, the trial court found that all three claims were "barred by *Rooker-Feldman* because [the [p]laintiff's claims c[ould] only succeed if the Court implicitly or explicitly determine[d] the Florida state court wrongly decided the [plaintiff's] foreclosure issue." *Id.* at 1323. In making this finding, the court noted the

following: (1) that for the plaintiff's "federal RICO claims to succeed, the Court must find that wire fraud occurred in Defendants' prosecution of foreclosures"; and (2) that "[i]f the Court conclude[d] that mail and wire fraud occurred in obtaining the foreclosures, and that the fraud damaged [the p]laintiff and class members, the Court would be saying the foreclosures were wrongfully granted and the resulting judgments are void." *Id.* at 1324. Indeed, the court found that the plaintiff's "federal claims c[ould] only succeed to the extent the Florida court erred" and that it could not grant the plaintiff "his requested relief without disturbing the Florida foreclosure judgment." *Id.* Specifically, as stated by the Court, "by entering judgments of foreclosure, the Florida state courts determined the foreclosures were proper . . . [and] exercised their authority over state law and found the foreclosing parties satisfied Florida's procedural safeguards." *Id.* In fact, even to the extent the plaintiff sought "money damages and not an explicit overturning of the state-court judgment," the court found that such a fact did "not change the . . . conclusion, as damages would only be available where there was a wrongful foreclosure." *Id.*

Importantly, in reaching a decision, now-Chief Judge Altonaga in *Figueroa* cited approvingly to *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150 (E.D.N.Y. 2010), summing up the case in pertinent part as follows:

> The defendants moved to dismiss, arguing, *inter alia,* that the *Rooker–Feldman* doctrine precluded plaintiff's suit, as plaintiff was actually seeking relief from the earlier foreclosure action. *See id.* at 162–63, at *7. **The court understood plaintiff's complaint as alleging defendants had "engaged in a pattern of submitting fraudulent and perjurious documents related to the ... Judgment of Foreclosure and Sale in other courts....**" *Id.* at 165, at *9. The court framed plaintiff's suit as "seeking to undo the 2005 state court judgment based upon what plaintiff argues was a pattern of allegedly fraudulent activity, and ... injuries that occurred as a result of the judgment ...." *Id.* Although the plaintiff also complained about actions occurring in the various bankruptcy petitions, "many of plaintiff's allegations of fraud involve[d] allegedly fraudulent documents or acts that were associated with the state court foreclosure proceeding." *Id.* Plaintiff further argued

the fraud cast doubt on the proceedings that culminated in the foreclosure judgment. *See id.* at 165, at \*9.

The court, in reviewing plaintiff's complaint, found her complained-of injuries stemmed from the foreclosure judgment. *See id.* It determined that to grant plaintiff her requested relief, the court "would necessarily have to review that [foreclosure] judgment ...." *Id.* The court went on to find that plaintiff's factual allegations were "inextricably intertwined with the state court judgment and would require overturning the state court judgment ...." *Id.* **The allegations were inextricably intertwined because plaintiff claimed the state-court judgment was the result of fraud, and if the court accepted plaintiff's arguments, it " 'would effectively declare the state court judgment fraudulently procured and thus void.' "** *Id.* at 166, at \*10 (quoting *Kropelnicki v. Siegel,* 290 F.3d 118, 129 (2d Cir.2002)). **Moreover, "[a]lthough plaintiff [ ] labeled the relief in the complaint as seeking monetary damages, it [wa]s abundantly clear that the whole purpose of th[at] action [wa]s to stop and undo the foreclosure judgment."** *Id.* at 165, at \*9. As a result, the court found "*Rooker–Feldman* clearly applie[d]." *Id.* The plaintiff had " 'ample opportunity to raise th[e fraud] claim before the state court' in her answer or her motions for reconsideration[,] ... [and] the proper venue to challenge that decision was by appeal in state court—not in federal court." *Id.* at 167, at \*11 (internal quotation marks and citations omitted).

*Figueroa*, 766 F. Supp. 2d at 1319 (emphasis added and alterations in original).

Here, Plaintiffs allege six causes of action in their Amended Complaint, five of which are numbered and the last being unnumbered. As part of Plaintiffs' civil theft claim (Count I), Plaintiffs seek "threefold damages . . . for the civil theft of the plaintiffs' home." [DE 13 at 8]. As part of Plaintiffs' civil conspiracy claim (Count II), Plaintiffs seek "compensatory damages, punitive damages and any and all other relief permitted by law." *Id.* at 9. As part of Plaintiff Mrs. Dixon's Fourteenth Amendment violation claim (Count III), Mrs. Dixon seeks "compensatory damages and any and all other relief permitted by law." *Id.* at 10. And, with respect to Plaintiff Mrs. Dixon's section 1983 claim (Count IV), Mrs. Dixon seeks "compensatory damages and any and all other relief permitted by law." *Id.*

However, as to Plaintiffs' quiet title claim (Count V), Plaintiffs seek "judgment for the plaintiffs' title to the real property [to] be restored and quieted against" Defendant CrossCountry. *Id.* at 12. And, as to the unnumbered declaratory judgment cause of action, Plaintiffs request that:

> Defendant Samantha Schosber [sic] July 19, 2022, orders be declared null and void for lack of jurisdiction, plaintiffs' be adjudged the legal owners of the stolen property and entitled to its possession as sole owners as is plaintiffs' right. CROSSCOUNTRY MORTGAGE LLC be adjudged to have no estate interest whatever in the stolen property, and for Ericka Chase the new owner of the stolen home be ordered to leave the property. That all documents recorded adversely and fraudulent after December 17, 2018, when the first foreclosure was vacated as null and void against title to the subject property . . . be declared null and void, and deleted.

*Id.* at 13. In other words, Plaintiffs are mainly seeking damages as part of Counts I–IV, and are seeking other relief as part of Count V and the unnumbered declaratory judgment cause of action.

First, with respect to the "two different series of events" discussed earlier in this Report & Recommendation, Counts I, II, V, and part of the unnumbered declaratory judgment cause of action implicate Defendants CrossCountry, Shipp, and Clear2Close's actions in purportedly committing civil theft and in conspiring to "unlawfully convert" Plaintiffs' property to Ericka Chase, with the Plaintiffs now seeking to quiet title against Ericka Chase. Counts III, IV, and the remainder of the unnumbered declaratory judgment cause of action, on the other hand, implicate Defendant Judge Schosberg Feuer's actions in declaring Mrs. Dixon a vexatious litigant and dismissing her quiet title action in state court, all while allegedly having no subject matter jurisdiction to do so, and Defendant Abruzzo's actions in preventing Mrs. Dixon's Rule 1.540(b) motion from ultimately being filed on the docket.

Clearly, then, Counts I, II, and V are merely additional attempts by Plaintiffs to attack the Final Judgment of Foreclosure in the Fifteenth Judicial Circuit Court in and for Palm Beach

County, Florida, under case number 50-2014-CA-013158-XXXX-MB, as Plaintiffs' claims are inextricably intertwined with the Final Judgment of Foreclosure. While Counts I and II may allege damages—and although independent damages claims may lie where such claims do not seek review of a state court judgment—it is evident that Plaintiffs' true intent is to once again attack the Final Judgment of Foreclosure. *See Kohler*, 578 F. App'x at 864; *Figueroa*, 766 F. Supp. 2d at 1324–25. As in *Figueroa*, if the Court determines that Defendants CrossCountry, Shipp, and Clear2Close committed civil theft or conspiracy utilizing fraudulent mortgage documents or improper procedures, "the Court would be saying the foreclosure[ w]as wrongfully granted and the resulting judgment[] . . . void." *Figueroa*, 766 F. Supp. 2d at 1324. In fact, this was the exact scenario discussed in *Swiatowski*. 745 F. Supp. 2d at 165 (stating that although the plaintiff labeled the requested relief as seeking monetary damages, it was clear the whole purpose of the action was to stop and undo the foreclosure judgment).

While Plaintiffs may seek "money damages and not an explicit overturning of the state-court judgment," such fact "does not change [that] . . . damages would only be available where there was a wrongful foreclosure." *Figueroa*, 766 F. Supp. 2d at 1324. Counts I, II, and V are thus due to be dismissed pursuant to the *Rooker-Feldman* doctrine, as Plaintiffs are merely "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

In reaching this decision, the Court is cognizant of *Klayman v. Deluca*, No. 15-CV-80310, 2016 WL 1045851 (S.D. Fla. Mar. 16, 2016), *aff'd*, 712 F. App'x 930 (11th Cir. 2017). In that case, the court thoroughly discussed application of the *Rooker-Feldman* doctrine as it pertains to

24

damages, concluding that the doctrine did not apply to the plaintiff's claim for monetary damages. *Klayman*, 2016 WL 1045851, at *7–8. To the extent that case can arguably be read as being in conflict with *Figueroa*, the Court notes that the *Klayman* court explicitly stated that "[t]here may be situations where awarding monetary damages would effectively nullify or reverse a state-court judgment." *Id.* at *5 n.4. Further, the Court also notes that while *Nivia v. Nation Star Mortgage, LLC*, 620 F. App'x 822 (11th Cir. 2015) distinguished *Figueroa*, it did so in the context of claims that did not "seek to undo the effect of [a] foreclosure judgment" or undermine its validity. *Nivia*, 620 F. App'x at 824. Here, Plaintiffs raise claims that seek to undermine the validity of the Final Judgment of Foreclosure and question the legitimacy of the foreclosure process. Thus, *Klayman* and *Nivia* are inapposite, and the Court finds that Counts I, II and V are wholly barred by the *Rooker-Feldman* doctrine.

Counts III and IV warrant a more nuanced discussion. Those counts stem from the trial court's dismissal with prejudice of Mrs. Dixon's Amended Complaint in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2022-CA-001549-XXXX-MB, and the events following Mrs. Dixon's purported voluntary dismissal. Mrs. Dixon did not appeal the dismissal with prejudice in that case. Therefore, to the extent that Mrs. Dixon now requests "any and all other relief," and to the extent such request can be interpreted as an attack on the dismissal order—which was itself a final, appealable order—the Undersigned finds that the *Rooker-Feldman* doctrine bars such requested relief, as this Court does "not have jurisdiction to review state-court decisions." *Nash*, 806 F. App'x at 872. Such portions of Counts III and IV are wholly barred by the *Rooker-Feldman* doctrine.

However, "the *Rooker-Feldman* doctrine does not apply when a party seeks money damages for the state court's alleged constitutional deprivations." *Drees v. Ferguson*, 396 F. App'x 656, 658 (11th Cir. 2010) (citing *Sibley v. Lando*, 437 F.3d 1067, 1071 & n.3 (11th Cir. 2005)). Therefore, to the extent Mrs. Dixon seeks compensatory damages as part of Counts III and IV, the Court finds that the *Rooker-Feldman* doctrine arguably does *not* bar such relief, as the purported constitutional violations appear to be separate and apart from any attacks on Defendant Judge Schosberg Feuer's orders and Defendant Abruzzo's actions in preventing Mrs. Dixon's motion to vacate from being filed on the docket. However, while dismissal of those parts of Counts III and IV which seek compensatory damages is arguably not appropriate on *Rooker-Feldman* grounds, dismissal is appropriate on other grounds, as discussed further below.

Finally, with respect to the unnumbered declaratory judgment action, Plaintiffs are essentially attacking *both* the Final Judgment of Foreclosure in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2014-CA-013158-XXXX-MB, and the dismissal with prejudice of Mrs. Dixon's Amended Complaint in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2022-CA-001549-XXXX-MB (and the events following Mrs. Dixon's voluntary dismissal). Stated differently, Plaintiffs are not seeking independent damages in the unnumbered declaratory judgment claim and are merely "state-court losers complaining of injuries caused by state-court judgments [or final orders] rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments [or final orders]." *Exxon Mobil Corp.*, 544 U.S. at 284. Thus, the Undersigned finds that the unnumbered declaratory judgment action is wholly barred by the *Rooker-Feldman* doctrine.

In sum, the undersigned United States Magistrate Judge **FINDS** and **RECOMMENDS** that the United States District Judge: (1) GRANT Defendants' Joint Motion to Dismiss, dismissing Counts, I, II, and V, and the unnumbered declaratory judgment claim based on the *Rooker-Feldman* doctrine; and (2) GRANT Defendants' Joint Motion to Dismiss, dismissing Counts III and IV based on the *Rooker-Feldman* doctrine to the extent Mrs. Dixon requests "any and all other relief," but DENY Defendants' Joint Motion to Dismiss on *Rooker-Feldman* grounds as to Counts III and IV to the extent Mrs. Dixon requests compensatory damages.[8]  The Court will now turn to addressing judicial and quasi-judicial immunity.

    c.   <u>Judicial & Quasi-Judicial Immunity</u>

Based upon the Undersigned's findings and recommendation above, only the damages aspects of Counts III and IV remain viable after application of the *Rooker-Feldman* doctrine to Plaintiffs' claims. Accordingly, the Undersigned will now address application of judicial and quasi-judicial immunity to Counts III and IV.

    i.    <u>Absolute Judicial Immunity</u>

"Florida courts have adopted a doctrine of absolute judicial immunity." *Sibley v. Lando*, 437 F.3d 1067, 1072 (11th Cir. 2005). "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *William B. Cashion Nev. Spendthrift Trust v. Vance*, 552 F. App'x 884, 885–86 (11th Cir. 2014). In this regard, "[a] two-part inquiry determines whether

---

[8]  That is not to say, however, that Counts III and IV survive Defendants' Motion to Dismiss, as there are other grounds separate from *Rooker-Feldman* (judicial immunity and quasi-judicial immunity) which require dismissal of those two counts. The Undersigned addresses Counts III and IV in the next section as it pertains to judicial and quasi-judicial immunity, and ultimately finds that Defendants Judge Schosberg Feuer and Abruzzo are entitled to judicial and quasi-judicial immunity, respectively.

judges enjoy absolute immunity: (1) did the judge deal with the plaintiff in her judicial capacity; and, if yes, (2) did the judge act in the clear absence of all jurisdiction." *Murphy v. Stacy*, 809 F. App'x 677, 682 (11th Cir. 2020) (internal quotation marks and alterations omitted) (quoting *Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985)).

"Whether a judge's actions were made while acting in his [or her] judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his [or her] judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). With respect to the second part of the two-part inquiry, "the 'absence of all jurisdiction' means 'a complete absence of subject matter jurisdiction'" and "[a] judge does not lose immunity because the action he took was in error,' or 'was in excess of his authority.'" *Murphy*, 809 F. App'x at 682 (quoting *Dykes*, 776 F.2d at 947 and *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)).

Here, Mrs. Dixon seeks damages against Judge Schosberg Feuer because Judge Schosberg Feuer "acted outside of her judicial capacity and unlawfully ruled Mrs. Dixon a vexatious litigant without subject matter jurisdiction, and unlawfully abridged Mrs. Dixon of equal access to the court, in violation of the Due Process Clause of the U.S. Constitution Fourteenth Amendment Section 1, causing irreparable harm." [DE 13 at 9]. And, Plaintiffs argue that judicial immunity does not apply because Judge Schosberg Feuer "acted under the color of law in clear absence of all jurisdiction." [DE 33 at 3–4].

The problem with Plaintiffs' argument, however, as noted in *Murphy*, is that the "absence of all jurisdiction" means the *complete* absence of subject matter jurisdiction—not that a judge

took action in excess of his or her authority. *Murphy*, 809 F. App'x at 682. In the instant case, Judge Schosberg Feuer entered an order and also declared Mrs. Dixon a vexatious litigant, which she did as a normal judicial function in her capacity as the presiding judge over the Civil Theft Case brought by Mrs. Dixon. The act of entering an order and declaring Mrs. Dixon a vexatious litigant was well within Judge Schosberg Feuer's judicial capacity and authority. *See id.* at 682–83. The question therefore becomes whether Judge Schosberg Feuer acted in the absence of **all** subject matter jurisdiction. *See id.* at 682. The Court finds she did not.

To this end, Florida state circuit courts have exclusive jurisdiction over "all actions at law not cognizable by the county courts" and "all cases in equity." *See* § 26.012(2), Fla. Stat. This exclusive jurisdiction includes all aspects of the Civil Theft Case. Thus, regardless of whether the state court *should* have made a ruling in the Civil Theft Case (which also included an action to quiet title) despite the pendency of the Prior Federal Action, there is no question that it was within Judge Schosberg Feuer's ability, authority, and jurisdiction to provide a ruling over a matter outside the county court's jurisdiction and within her Circuit Court jurisdiction, and Judge Schosberg Feuer therefore did not act in the absence of all subject matter jurisdiction. *See id.* Indeed, even assuming for the sake of argument that Judge Schosberg Feuer acted in excess of her jurisdiction (which the Court finds she did not), it is clear that she did not act in the *clear absence* of all subject matter jurisdiction. *Sibley*, 437 F.3d at 1073.

Stated differently, the undersigned United States Magistrate Judge **FINDS** and **RECOMMENDS** that the United States District Judge: (1) find that Judge Schosberg Feuer is entitled to judicial immunity as to Counts III and IV of Plaintiffs' Amended Complaint; and (2) GRANT Defendants' Joint Motion to Dismiss and dismiss Counts III and IV with prejudice as

against Judge Schosberg Feuer. *See Goodley v. Greene*, No. 21-CIV-61284, 2021 WL 4244869, at *6 (S.D. Fla. Sept. 17, 2021).

ii.    Quasi-Judicial Immunity

"Absolute quasi-judicial immunity derives from absolute judicial immunity." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). "Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties have an integral relationship with the judicial process." *Id.* (internal quotation marks and citation omitted). Courts "determine the absolute quasi-judicial immunity of a nonjudicial official through a *functional* analysis of the action taken by the official in relation to the judicial process." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). "When an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious." *Id.* at 556 n.4.

Here, with respect to Counts III and IV, Plaintiffs take issue with Judge Schosberg Feuer purportedly conspiring with Defendant Abruzzo to preclude Mrs. Dixon from filing her rule 1.540(b)(4) motion on the docket. However, on July 19, 2022, Judge Schosberg Feuer entered an Order declaring Mrs. Dixon a vexatious litigant because Mrs. Dixon was "serving as an alter ego for her husband . . . and must be subject to the restrictions matching those of the prior Vexatious Litigant Order entered against her husband . . . by the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida on March 17, 2014 in Case No. 50-2014-CA-014618-XXXX-MB." [Civil Theft Case DE 81 at 2–3]. Based on that order, Defendant Abruzzo purportedly "deleted plaintiff Mrs. Dixon's 1.540(b)(4) motion to vacate from off the circuit court docket . . . and . . . mailed the 1.540(b)(4) motion back to Mrs. Dixon's home residence." [DE 13 at 5]. In other words, based on Mrs. Dixon's status as a vexatious litigant, Defendant Abruzzo acted pursuant to a direct

judicial order and refused to file Mrs. Dixon's motion on the docket in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, under case number 50-2014-CA-014618-XXXX-MB. Consequently, "quasi-judicial immunity is obvious" as it pertains to Defendant Abruzzo. *Roland*, 19 F.3d at 556 n.4. Thus, Mrs. Dixon's claims against Abruzzo must fail.

The undersigned United States Magistrate Judge therefore **FINDS** and **RECOMMENDS** that the United States District Judge: (1) find that Defendant Abruzzo is entitled to quasi-judicial immunity as to Counts III and IV of Plaintiffs' Amended Complaint; and (2) GRANT Defendants' Joint Motion to Dismiss as to Counts III and IV and dismiss those two counts with prejudice as to Defendant Abruzzo. *See Survivor v. Our Kids of Miami-Dade/Monroe, Inc.*, No. 11-24611-CIV, 2013 WL 12094395, at *2 n.2 (S.D. Fla. Oct. 29, 2013).

d.   The Remaining Arguments and Issues

Pursuant to the clear application of the *Rooker-Feldman* doctrine and pursuant to the application of judicial and quasi-judicial immunity, the Undersigned need not reach Defendants' additional arguments concerning Plaintiffs' failure to state a cause of action as to several counts, or Defendants' arguments concerning res judicata and collateral estoppel. That is because this case should be dismissed in total based on the above analysis without regard to those additional arguments. However, the Undersigned deems it prudent and appropriate to address Plaintiffs' abusive, repetitive, and serial filings in both state and federal court.

Specifically, it is clear to the Undersigned that Plaintiffs have refused to accept the foreclosure proceedings in state court and continue—and will likely continue—to file lawsuits that in some form or manner connect and intertwine with the Foreclosure Case.[9] The Eleventh Circuit

---

[9] The Undersigned takes judicial notice of the following Federal cases:

has "upheld pre-filing screening restrictions on litigious plaintiffs." *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993). "The only restriction this Circuit has placed upon injunctions designed to protect against abusive and vexatious litigation is that a litigant cannot be 'completely foreclosed from *any* access to the court.'" *Martin-Trigona*, 986 F.2d at 1387 (quoting *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986)). It is clear to the Undersigned that both Plaintiffs are abusive, serial, and vexatious litigants who continue to file frivolous pleadings directly and indirectly attacking the Final Judgment of Foreclosure, which conduct unnecessarily consumes a large portion of scarce federal judicial resources and also wastes the resources of their targeted defendants.

The undersigned United States Magistrate Judge therefore **RECOMMENDS** that the United States District Judge explicitly warn the *pro se* Plaintiffs that it may consider the implementation of pre-filing screening restrictions to preclude Plaintiffs from continuing to file abusive, vexatious, and frivolous lawsuits connected and inextricably intertwined with the Foreclosure Case, so long as Plaintiffs are not completely foreclosed from *any* access to the court. These restrictions of which Plaintiffs may be warned are detailed below.

---

1.  19-cv-80022-MARRA (involving a Civil Theft claim in connection with Plaintiffs' mortgage)
2.  18-cv-80568-MIDDLEBROOKS (involving a Quiet Title claim and claims connected to Plaintiffs' mortgage)
3.  18-cv-81561-ALTMAN (involving an attack on Mr. Dixon's vexatious litigant status, brought against another state court judge)
4.  17-cv-80291-ROSENBERG (involving Federal and Florida False Claims Act claims against several banks and mortgage servicers)
5.  10-cv-80216-DIMITROULEAS (involving FDUTPA, fraud, and other claims against Countrywide Home Loans, Inc. in connection with Mr. Dixon's mortgage payments)
6.  09-cv-81021-DIMITROULEAS (involving misrepresentation and fraud claims in connection with Mr. Dixon's mortgage payments).

## V.     CONCLUSION

For all of the above reasons, the Undersigned **FINDS** and **RECOMMENDS** that the District Judge **GRANT IN PART AND DENY IN PART** Defendants' Joint Motion to Dismiss [DE 22], as stated herein. That is, pursuant to the *Rooker-Feldman* doctrine, the Undersigned **RECOMMENDS** that Counts I, II, V, and the unnumbered declaratory judgment action in Plaintiffs' Amended Complaint [DE 13] be **DISMISSED**, *without leave to amend,* as any attempt to amend would be futile. *See Walker v. Handler*, No. 15-14153-CIV, 2015 WL 13776952, at *4 (S.D. Fla. July 30, 2015), *report and recommendation adopted*, No. 15-CV-14153, 2015 WL 13776953 (S.D. Fla. Aug. 24, 2015) (stating that any attempt to amend the complaint to better state subject matter jurisdiction or personal jurisdiction would be futile); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile.").

Moreover, pursuant to judicial and quasi-judicial immunity, the Undersigned **RECOMMENDS** that the entirety of Counts III and IV of Plaintiffs' Amended Complaint [DE 13] be **DISMISSED WITH PREJUDICE**. This of course includes all portions of Counts III and IV, whether seeking monetary relief or not. *See Goodley*, 2021 WL 4244869, at *6; *Survivor*, 2013 WL 12094395, at *2 n.2; *Sibley*, 437 F.3d at 1074 (stating that any attempt to amend where a judge was entitled to judicial immunity would be futile).

Further, the Undersigned **RECOMMENDS** that the two *pro se* Plaintiffs, BLANCHE L. DIXON AND ROY J. DIXON, JR., be explicitly warned that the Court will consider the imposition of pre-filing screening restrictions upon them, in the event that they jointly or

individually attempt to file pleadings or papers that are frivolous and/or continue to directly or indirectly challenge the Final Judgment of Foreclosure on their former home. The recommended pre-filing screening restrictions of which Plaintiffs may be warned include, but are not limited to: (1) that both Plaintiffs be prohibited "from filing or attempting to initiate any new lawsuit in this district or in any federal court in the United States [pertaining to the Final Judgment of Foreclosure] . . . without first obtaining leave of that federal court"; and (2) that before Plaintiffs initiate any new lawsuit in this district or in any federal court in the United States pertaining to the Final Judgment of Foreclosure, that Plaintiffs be required "to file a motion for leave to file, attaching a copy of [the] proposed lawsuit and a reference to [this Court's order if pre-filing screening restrictions are implemented], at which point the court would review the lawsuit and decide whether it should be accepted by the clerk and filed." *See Watkins v. Dubreuil*, 820 F. App'x 940, 948 (11th Cir. 2020).

## VI. <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of June 2023.


WILLIAM MATTHEWMAN
United States Magistrate Judge